BOARD OF EDUCATION OF CITY SCHOOL DISTRICT OF CITY OF OAKWOOD, APPELLANT, *v.* DILLE, APPELLEE.*

(No. 2506—Decided March 19, 1959.)

*Mr. Francis S. McDaniel,* for appellant.
*Mr. James W. Drake* and *Mr. William A. Swaney,* for appellee.

CRAWFORD, J. Plaintiff, the Board of Education of the City School District of the City of Oakwood, appellant herein, appeals on questions of law from a judgment of the Court of Common Pleas denying plaintiff the right to collect tuition for defendant-appellee's minor daughter.

It was agreed that the daughter, Carol Dille, being of school

_____
*Motion to certify the record overruled, July 1, 1959.

age, attended the Oakwood city schools during the school years 1953-1954 and 1954-1955, and that if plaintiff should be entitled to recover, the total amount of tuition owing for the two years is $585. The evidence indicates that this pupil entered the Oakwood High School at the beginning of the first year as a school resident living at 136 Far Hills Avenue in the city of Oakwood.

Plaintiff's claim involves Section 3313.64, Revised Code, which, in pertinent part, reads as follows:

"The schools of each city, exempted village, or local school district shall be free to all school residents between six and twenty-one years of age * * *. School residents shall be all youth who are children or wards of actual residents of the school district. District of school residence shall be the school district in which a school resident is entitled to attend school free. * * *

"* * *

"The board of education of a city, exempted village, or local school district may admit other persons to the public schools of its respective district upon the payment of tuition within the limitation of law."

The Court of Common Pleas heard the case without a jury. The judge did not determine whether the defendant was an actual resident of the Oakwood City School District. He did find, and his findings are supported by the evidence, that Carol Dille entered the Oakwood City High School for the school year 1953-1954 and gave her address at 136 Far Hills Avenue; that during that year plaintiff determined that she was a nonresident pupil but continued her in school without collecting tuition from the defendant; that plaintiff admitted her for the succeeding year without collecting tuition or obtaining an agreement from the defendant to pay tuition; and that plaintiff attempted to collect tuition from the defendant for both years, but defendant refused to pay.

The Court of Common Pleas held that under the provisions of Section 3327.06, Revised Code, plaintiff had made an election and thereby fixed the attendance status of Carol Dille as being "unauthorized attendance," and accepted the legal results flowing from such status. Upon that basis the court held that the petition failed to state a cause of action.

Inasmuch as we now have the benefit of a bill of exceptions containing the testimony, we shall first consider whether defendant was an "actual resident" of the Oakwood City School District during these two years.

The only testimony regarding defendant's living arrangements is given by the defendant and his wife. This testimony is consistent and uncontradicted and establishes the following facts:

During the two school years in question, Carol Dille attended her aged and ailing grandmother, defendant's mother, at the latter's residence at 136 Far Hills Avenue. Carol prepared the grandmother's lunch and dinner every day and often stayed there over night, depending apparently upon the grandmother's condition. Carol helped with the cleaning and ordered the groceries. When the grandmother's health permitted Carol went at night to 5300 Wilmington Avenue, in Sugar Creek Township School District, Greene County, Ohio, where her mother stayed with six other children. It was estimated that Carol spent from one-third to one-half of her time at the grandmother's and the remainder on Wilmington Avenue.

Defendant was at 136 Far Hills Avenue at least once each day, frequently took lunch as well as dinner there, and on a few occasions during the two-year period in question stayed there at night. Most of the time he slept at 5300 Wilmington Avenue and usually took one or two meals a day there. The youngest child was seriously ill during this time and Dr. Dille says that in order to care for such child he spent much more of his time there at Wilmington Avenue than he would otherwise have done.

The Dilles referred to the Wilmington Avenue address, which was on a farm in the country, as a "recreation area" or "recreational headquarters." Mrs. Dille did not enjoy being there but remained for the welfare of the children, especially of the youngest. She never considered it her permanent home, and said she did not "expect to be there too long." The children annoyed the grandmother so that they were seldom together in the same house except for brief visits back and forth.

Dr. and Mrs. Dille said they did not expect to stay permanently in the country but intended to return to the city whenever the health of the youngest child and that of the grandmother and the welfare of the other children would permit.

Dr. Dille. was born at 136 Far Hills Avenue. His mother has lived there all her life. During defendant's years of internship and employment at various hospitals he never lived constantly at any one place. While he interned, his wife and children lived at 136 Far Hills Avenue, and he always returned there after his sojourns elsewhere.

When Dr. Dille's father died he purchased his mother's interest in the Far Hills Avenue house and its contents (it being fully furnished), thus becoming the sole owner; and since that time he has cared for his mother and looked after the property and attended to its management and upkeep.

About 1942 or 1943 Dr. Dille purchased a house at 224 West Dixon Avenue in the city of Oakwood and he and his wife and children moved from 136 Far Hills Avenue to 224 West Dixon Avenue, where they continued to live until May or June of 1953. At that time, in anticipation of selling the house at 224 West Dixon Avenue they moved part of their furniture to 136 Far Hills Avenue, part to 393 West First Street in the city of Dayton, Ohio, where Dr. Dille carried on a business and maintained an apartment, and part to a place which he then owned in Clinton County and which he and his family occupied a considerable portion of the time, particularly in summer and on week-ends.

Dr. Dille says also that at this time they moved their residence from 224 West Dixon Avenue back to 136 Far Hills Avenue. They used the latter address for receiving mail, also as their voting residence, and as the address from which they made their personal property tax returns. Dr. Dille continues to receive his mail at 136 Far Hills Avenue and at his place of business.

Referring to 5300 Wilmington Avenue, counsel asked Dr. Dille: "Now do I understand you have a recreational headquarters, Doctor?"

The defendant replied: "Yes, I call it that because of the fact that I use 136 Far Hills Avenue as my base of operations, my home, it has been mentioned the place I vote, the place where I intend to go back to as soon as the other factors can be ironed out one way or the other."

In August of 1953 the mother was making her home with the

defendant at 136 Far Hills Avenue. Just prior to the sale of 224 West Dixon Avenue, which apparently occurred shortly prior to September 1953, Mrs. Dille and the children were spending considerable time at the place in Clinton county.

Exactly when defendant acquired the house at 5300 Wilmington Avenue does not clearly appear, although there are suggestions that it was around 1953. But whenever it was, he thereupon moved to that address the furniture which had previously been in Clinton county, and the Wilmington Avenue house became almost completely furnished except for the living room. This place, 5300 Wilmington Avenue, known as Sweet Arrow Farm, was owned by a corporation and managed by defendant. It appears to have been used, as the place in Clinton county had previously been, as a place of retreat from the city.

Except for Carol Dille and one child who attended the Centerville schools, Washington Township, Montgomery County, for which tuition was paid, the other children of school age attended school in Sugar Creek Township, Greene County.

Although the terms "residence" and "domicile" have different meanings, they frequently bear an important relationship to each other. One can have no domicile where he has never had a residence, and the character and significance of a person's presence at a certain place may conceivably be affected by the location of his domicile at that place.

Efforts to define each of these terms sometimes appear almost as varied as the facts to which they are applied. Therefore, without attempting an exhaustive review of these voluminous definitions, it may be observed that two fundamental characteristics of a person's domicile are that it is single and continuing—that is to say, a person can have but one domicile at a given time, and such domicile continues until another is established. It is our view that defendant's domicile during the time here in question was at 136 Far Hills Avenue in the Oakwood City School District.

But a person may have more than one residence at the same time. 18 Ohio Jurisprudence (2d), 164, Domicile, Section 6; *Grant* v. *Jones,* 39 Ohio St., 506, 515; *Hill* v. *Blumenberg,* 19 Ohio App., 404; 77 Corpus Juris Secundum, 293; 17A American

Jurisprudence, 202, Domicile, Section 9. And again, without attempting an exhaustive review of the definitions of residence, upon the basis of the facts and circumstances detailed above, we are of the opinion that, for the purposes of Section 3313.64, Revised Code, defendant was an actual resident of 136 Far Hills Avenue. He was physically present and living there as a householder during significant parts of each day and for important purposes consistent with residence. There was no subterfuge, and nothing temporary or accidental about such residence. His roots there were deep, permanent, present and substantial.

Perhaps one of the reasons for the variety of definitions of residence is that the term is applied for many different purposes. It has been appropriately stated that:

"As in construing other statutes, in the construction of legislation using the term 'residence' the courts look primarily to the legislative purpose as well as the context." 17A American Jurisprudence, 201, Domicile, Section 9.

School attendance is mandatory in Ohio, and there is a corresponding powerful public policy that free attendance at an appropriate public school shall be available to every child of school age. Such is the primary purpose of Section 3313.64, Revised Code. That statute must, therefore, be liberally construed to the accomplishment of its intended purpose.

The Common Pleas Court found among other things that "defendant also owned and maintained a place of residence at 5300 Wilmington Avenue, Greene County, Ohio, where he resided with the other members of his family and which was regarded by defendant as a temporary residence." We do not disagree with this finding but do not consider it necessary to, or inconsistent with, our conclusions.

In view of our opinion that defendant was an actual resident of the Oakwood City School District, we do not reach the question of an election by plaintiff. But we find that judgment was properly entered for the defendant.

No error prejudicial to the plaintiff appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

Wiseman, P. J., concurs.